WILLIAM S. McEWEN AND HENRY H. WILEY, PLAINTIFFS IN ERROR, *v.* JOHN DEN, LESSEE OF CHARLES BULKLEY AND STUART BROWN.

By the laws of Tennessee anterior to 1856, a deed for lands lying in Tennessee could not be acknowledged or proven in another State before the clerk of a court.

In 1856, a law was passed allowing this to be done. This statute was prospective.

The circumstance that the law of 1856 was called an amendment of the prior law does not change this view of the subject.

Where a deed was acknowledged in 1839, before the clerk of a court in another State, a copy of it from the record was improperly allowed to be read in evidence to the jury.

Where the defendant claimed under the statute of limitations and showed possession of Evans's coal bank; the validity of this plea will depend upon the fact whether or not Evans's coal bank is within the lines of the plaintiff's patent.

The case remanded to the Circuit Court for the purpose of ascertaining this by a corrected survey made according to the rules laid down by this court.

THIS case was brought up by writ of error from the Circuit Court of the United States for the eastern district of Tennessee.

It was an ejectment brought under the circumstances stated in the opinion of the court, and was argued by *Mr. Maynard* and *Mr. Heiskell* for the plaintiffs in error, and *Mr. Nelson* for the defendants.

*McEwen et al. v. Den, Lessee.*

The principal question in the case was, whether the posses-sion of the defendants below was upon the tract of land claimed by the plaintiffs, so as to constitute a bar to the action through the statute of limitations. Maps were produced in court, but so many tracts of land were laid down upon them, that it was difficult to decide the point. The arguments of counsel bearng upon it could not possibly be understood by the reader.

Mr. Justice CATRON delivered the opinion of the court.

Bulkley sued McEwen and Wiley, in an action of ejectment, for 5,000 acres of land. At the trial, the plaintiff introduced a patent issued to Thomas B. Eastland, dated December 21st, 1838, No. 22,261. The plaintiff next offered to read the copy of a deed from Eastland to Bulkley for the tract granted, (with other lands;) to the reading of which objection was made, but the court admitted the copy to be read; to the admission of which the defendants excepted.

By the laws of Tennessee, the fee in land does not pass un-less the conveyance is proved, or duly acknowledged and regis-tered. This deed purports to have been acknowledged by the grantor, Eastland, before the clerk of the court of common-pleas for the city and county of New York, and is certified under his seal of office. And this was accompanied by a cer-tificate of the judge of said court, that Joseph Hoxie, before whom the deed was acknowledged, was clerk, and that the court of which he was clerk was a court of record. On this evidence of its execution, the deed was registered in the county where the land lies; but at what time it was registered does not appear. The acknowledgment was taken October 25th, 1839. At that time, a deed for lands lying in Tennessee could not be acknowledged or proven in another State before the clerk of a court.

In 1856, an act was passed, (ch. 115,) which it is insisted vali-dates this probate. It provides, that deeds proved or acknowl-edged before the clerk of any court of record in any of the States of this Union, and certified by the clerk under his seal of office, and the chief magistrate of the court shall certify to the official character of the clerk, the probate or acknowledg-

ment shall be valid. And the second section declares, that all deeds proved or acknowledged, and certified in manner aforesaid, may be registered in this State, and shall be good to pass title, &c.

It is insisted, that the act is retrospective as well as prospective in its operation, and covers the acknowledgment made in 1839, in New York.

We think the statute of 1856 is prospective, and that to hold otherwise would be a strained construction, and violate a general rule of jurisprudence, to wit, that it is of the very essence of a new law that it shall apply to future cases, and such must be its construction, unless the contrary clearly appears.

It is next insisted that the act of 1856, being an amendment of the act of 1839, carries with it the provisions of this law. The act of 1856 declares, that the act of 1839 " be so amended " that all deeds, powers of attorney, &c., proved or acknowledged before a foreign clerk, may be registered, and have full effect. An additional mode of probate is provided; nor does the act go any further.

The deed offered in evidence was recorded without legal proof of its execution; and, therefore, a copy of the record could not be evidence. The court erred in admitting the copy to go to the jury.

The plaintiff below described the land sued for in his declaration, which is required to be done by the laws of Tennessee. The declaration calls for the boundaries of grant No. 22,261, made to Thomas B. Eastland, December 21st, 1838. The defendants then gave in evidence two other grants, for 5,000 acres each; one to Thomas B. Eastland, No. 22,267, being one of the tracts contained in the deed from Eastland to Bulkley; and another to Henry H. Wiley, one of the defendants, No. 26,086. The two junior patents covered the principal possession of the defendants, at a place known as Evans's coal bank. This fact was admitted; and it furthermore appeared, that the defendants had held seven years' adverse possession at the coal bank, under Wiley's grant. And it was insisted below, and is again here, that as Bulkley had shown himself to be the owner of both the tracts granted, and as the op-

eration of the act of limitations drew to Wiley's younger patent the title of Eastland's junior grant, and vested this title in the defendants, they were protected by the statute, because Bulkley had the right to sue at all times during the seven years, by virtue of grant No. 22,267. But the court instructed the jury to the reverse of this assumption, and, we think, correctly. From the facts stated, it is true that the right of action founded on the younger grant to Eastland was barred, to the extent that Wiley's grant interfered with No. 22,267; and assuming it to be true, that the defendants could avail themselves in defence, or affirmatively, of this title, still it could avail them nothing, as both No. 22,267 and No. 26,086 were inferior to grant No. 22,261.

The main question in the cause turns on the fact, whether the possession at Evans's coal bank was within the boundary of the grant No. 22,261, described in the declaration, and alone relied on at the trial by the plaintiff. It calls to begin on the south bank of Coal creek, four poles below Bowling's mill; thence running south with the foot of Walden's ridge, 894 poles, to a stake at letter H, in Henderson & Co.'s Clinch river survey; then west, crossing Walden's ridge, 894 poles to a stake; thence north 894 poles to a stake; then a direct line to the beginning.

It was proved at the trial, and is admitted here, that no line was originally run and marked but the first one; and that at H there is a marked poplar corner tree, which is a line mark of the grant. It being admitted that the first line is established, and that it is regarded as a north and south line, and that the other lines of the tract were not run or marked, it follows they must be ascertained by course and measurement. How they are to run is matter of law; and on this assumption, the Circuit Court instructed the jury as follows: "To identify the land appropriated, the jury must look to the calls, locative and directory, the foot of the mountain, the creek, the coal bank, the marked trees, courses and distance, number of acres demanded and paid for, &c.; and they will look to the survey, full or partial; that assuming the correct mode of survey to have been by horizontal measurement, and that the surveyor

based his identification of the land entered on surface measure, in accordance with his custom and the custom of the mountain range of country in which he resided, this would not of itself defeat the location of the land, and the boundaries of the grant as indicated by the survey, calls, and other evidence, tc. all of which they would look in adjusting the boundaries of the plaintiff's grant." To this charge, exception was taken. We think the instructions given were too vague and general to afford the jury any material aid in ascertaining the true boundaries of the land granted. The first line calls for two corners admitted to exist; this line must govern the three others. 1 Meigs's Digest, 154. It falls short of the distance called for, being only about 800 poles long. Its course being found, the next line running west must be run at right angles to the first one. In ascertaining the southwest corner of the tract at 894 poles from the poplar corner, the mode of measuring will be to level the chain, as is usual with chain-carriers when measuring up and down mountain sides, or over other steep acclivities or depressions, so as to *approximate,* to a reasonable extent, horizontal measurement, this being the general practice of surveying wild lands in Tennessee. The reasonable certainty of distance, and approximation to a horizontal line, is matter of fact for the jury to determine.

The 3d line running north, from the ascertained western termination of the second, must run parallel with the first line, and be continued to the distance of 894 poles; the chain being levelled as above stated. The 4th line will be run from the northern terminus of the 3d line to the beginning near Bowling's Mill.

The surveyor who made the survey on which grant No. 22,261 is founded, deposed at the trial, "that no actual survey was made in 1838 of said land, except the first line from A to H. That the other three lines of the grant were not run, but merely platted. That the proper mode of making surveys was by horizontal measurement, but that he had not been in the habit of making them in that way; that in making the line from A to H, in this survey, he had measured the surface; that the custom of the country was to adopt surface measure;

and that he had made the survey in accordance with such cus tom."

The grantee was bound to abide by the marked line from A to H; but the other lines must be governed by a legal rule, which a local custom cannot change. Should this custom be recognised as law, governing surveys, it must prevail in private surveys, in cases of sales of land, when the purchaser who bought a certain number of acres might, by surface measure across a mountain, lose a large portion of the land he had paid for. And such would be the case with this grantee, were he restricted to surface measure; whereas, by the terms of his patent, the Government granted to the extent of lines approximating to horizontal measurement. How far the act of limitations will affect the plaintiff's title, will depend on the fact whether Evans's coal bank falls within the boundary of the patent sued on, as it is not claimed that the other possession at a different place on grant No. 22,261, and for which trespass the recovery was had, was seven years old when the suit was brought.

It is ordered that the judgment below be reversed, and the cause remanded for another trial to be had therein.