## EMPIRE GAS & FUEL CO. v. HIGGINS OIL & FUEL CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 11, 1922.)

No. 3801.

**1. Reformation of instruments ⬤⟳32—Right held barred by delay after adverse party denied right.**

Though an oil, gas, and mineral lease would have been reformed to embrace land which the parties intended to include, where a purchaser of such land notified the lessee that it denied that the lease included such land and thereafter excluded the lessee therefrom, and the lessee remained inactive for nearly three years, during which time the purchaser made a large outlay, and bored a well and struck oil, there was such laches as defeated reformation.

**2. Mines and minerals ⬤⟳79(6)—Lease held not forfeited by failure to pay rent to purchaser of part of premises.**

Under an oil, gas, and mineral lease providing that it might be continued in force by paying $25 per quarter to the lessors, and that such payment might be deposited to the lessors' credit in a specified bank, but not providing that payment should be made before any given date, though the lessees had recognized the right of a purchaser of part of the land to a proportionate part of the renewal payment, the lease was not forfeited by depositing the whole payment to the credit of the lessors who at all

---

times recognized that they held it for the purchaser and others entitled thereto.

**3. Mines and minerals ⊂⇒79(1)—Purchaser of property leased held entitled to part of payment to keep lease in force.**

Under an oil, gas, and mineral lease, providing for the payment of $25 a quarter to keep it in force, and that this payment might be deposited in a bank, where purchasers of portions of the leased property demanded their proportionate part of the renewal payments, and the demand was conceded by all parties, and a division was made and acted on for more than a year during which payments were made to the bank for the credit of the several purchasers, this amounted to an agreement that they were entitled to such division and as to the manner of payment.

Appeal from the District Court of the United States for the Eastern District of Texas; W. L. Estes, Judge.

Suit by the Empire Gas & Fuel Company against the Higgins Oil &: Fuel Company and others. From a decree dismissing the bill, plaintiff appeals. Affirmed in part and remanded.

Lewis R. Bryan and A. D. Dyess, both of Houston, Tex., and Robert D. Garver, of Fort Worth, Tex., for appellant.

Will E. Orgain, of Beaumont, Tex., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. On December 23, 1915, J. M. Barrow and others executed to Marrs McLean an oil, gas, and mineral lease covering 127 acres of land in Liberty county, Tex. The metes and bounds of this tract were not given in said lease, but were stated to be the calls in an expired lease made to the Sun Company as shown by the record of such lease, to which reference was made for a full description. The Empire Gas & Fuel Company (hereinafter styled Empire Company) became the assignee from McLean of his lease.

This lease granted for one year the right of exploiting the lands for oil, gas and other minerals, in consideration of $100 paid and such other payments as might be thereafter made, and of certain royalties reserved, with the expenditures which the lessee might make. It provided that the drilling of a well for oil or gas should be begun within 12 months from the date of delivery of the lease, or the same should be forfeited, but that the lessee might avoid the forfeiture, and continue the right to exploit, if no well was dug, for as long as 6 years, by paying $25 per quarter to the lessor. Any payment to become due was to be deemed complete, if made or tendered to the lessor, or deposited or tendered for deposit to the lessor's credit in the Liberty State Bank at Liberty, Tex.

The contract stated that nothing was conferred on the lessee by it, except a franchise for development of the mineral resources for said 12 months, and the option to extend such privilege; but if a well was sunk, and oil, gas, or other minerals discovered in paying quantities, the lessee should at once become invested with an estate in and to all the minerals underlying said land with the exclusive right to produce the same, as long as produced in paying quantities, paying to the lessor the royalties reserved. The contract was made binding on, and its

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

terms extended to, the successors, legal representatives, and successive assigns of each party.

After said lease, the lessors sold the fee of 17 acres of said property, by metes and bounds, which by mesne conveyances became the property of the Higgins Oil & Fuel Company (hereinafter styled Higgins Company). While the deeds did not refer to the outstanding lease, the vendees were informed thereof and took subject thereto. The metes and bounds of said deeds embraced 3.22 acres which were not included in the calls of the Sun Company lease, referred to in the lease assigned to the Empire Company; but it was the purpose of the lessors to include said 3.22 acres in the lease.

McLean, while lessee, and the Empire Company, as assignee, did not dig a well within a year, but successively renewed the lease contract by paying the $25 per quarter required to renew the same. After the Higgins Company had acquired said land, it demanded, first of said McLean, and then of the Empire Company, the payment of its pro rata of the sums paid to continue said lease, on the basis of owning 17 acres of said 127 acres, and the demand was recognized and complied with; the original lessors apparently consenting.

When the Empire Company was acquiring the assignment of said lease, it was advised that the calls of its lease, by reference to the Sun Company lease, did not include 3.22 acres of the land sold by the lessors and then owned by Higgins Company; but, on being shown letters from the Higgins Company demanding its share of the renewal price for its entire purchase as covered by said lease, it considered the defect in description as cured. On November 17, 1917, the Empire Company made payment of renewals for four quarters, or one year, beginning December 23, 1917, to the Liberty State Bank, and directed the Higgins Company to be credited with its proportion thereof, stating the acreage and amount, which was done.

On April 18, 1918, Higgins Company called to the attention of the Empire Company its claim that 3.22 acres of the 17 acres purchased from said lessors were not included in said lease, and tendered back the rental received on said 3.22 acres. This was declined by the Empire Company, who insisted its lease covered said 3.22 acres. Several letters passed between them, each side adhering to its position. When another quarterly installment fell due in December, 1918, the Empire Company paid the same to the Liberty State Bank to the credit of Barrow and others, the original lessors. It did not notify the Higgins Company of this payment. It paid subsequent installments for the quarters ending September 1, 1919, to said bank, to the credit of said original lessors.

On March 25, 1919, said Higgins Company notified said Empire Company that it had canceled said lease, as to the lands purchased by it from the original lessors, because of a failure to pay the installment for the quarter beginning December 23, 1918, and has since forbidden said Empire Company to enter on said lands. On August 12, 1919, a proportion of the renewals apportioned to the 17 acres of land purchased by Higgins Company, paid to said original lessors, was placed to the credit of said company by said lessors, to whom it had been paid.

The renewal rentals since have been paid quarterly in advance to said bank, and the proportionate parts, appurtenant to said 17 acres, have been placed to the credit of Higgins Company. In 1920, the Higgins Company started boring a well on said 3.22 acres, and before this suit was begun had bored the same about 2,800 feet and expended $20,000. It has since bored it to a depth of 3,300 feet and struck oil.

On January 15, 1921, the Empire Company (a corporation and citizen of Maine) brought its suit in the United States District Court for the Eastern District of Texas, against the defendants, citizens of Texas, praying that said lease to it be declared not to be forfeited, that it be decreed to include said 3.22 acres, that the same be decreed to have been omitted from the metes and bounds by mutual mistake, that the description in said lease be reformed so as to include the same, and for general relief. The court below dismissed the bill, and decreed that said lease, so far at it affected the 17 acres bought by said Higgins Company, had ceased, and was canceled and at an end, and that all reformation thereof be denied.

The points presented by this appeal are two: (1) Whether the lease was intended to embrace said 3.22 acres, and should be now reformed to include the same; (2) whether said lease was properly declared to have ceased and to be canceled as to all of said 17 acres.

[1] That the lease was understood to embrace said 3.22 acres and was intended, when made, to do so, is clearly established by the testimony. The failure to include it in the calls for the boundaries of the tract was due to a mistake of both parties; it being believed that the calls of the Sun Company lease, referred to, embraced it. It also would seem that the Higgins Company and its predecessor in title, Nash, when each purchased, understood that the entire 17 acres was covered by the lease, and if the Empire Company had moved promptly when Higgins Company insisted that the lease did not cover said 3.22 acres, and asserted the exclusive right of entry thereon, a reformation of said lease should have been awarded.

But as early as April, 1918, the Higgins Company notified the Empire Company that it denied that the lease included said 3.22 acres. It does not appear to have at any time since then permitted the Empire Company to come on said 3.22 acres. The Empire Company remained inactive until January, 1921. In the meantime, it suffered Higgins Company to make a large outlay and bore a well on said 3.22 acres. This was such laches on the part of the plaintiff as will defeat an application to now reform this lease, so as to include this property in its description. Patterson v. Hewitt, 11 N. M. 1, 66 Pac. 552, 55 L. R. A. 658, 664, 667, affirmed 195 U. S. 309, 25 Sup. Ct. 35, 49 L. Ed. 214.

[2] We do not think that there has been such default in the payment of the installments required to prevent a forfeiture of this contract as will forfeit same as to the rest of said 17 acres conceded to be included in the description of said lease. There clearly has not been a forfeiture of the entire contract, as all of the other owners of the leased property, except the purchaser of this 17 acres, have accepted the renewal payments. Here there has been no default of payment into the

designated depository of the sums due, and while some of them were paid to the credit of the original lessors, that lessor, at all times, recognized that he held them to be paid over to the purchaser of said 17 acres, and others entitled thereto.

[3] Whether it might have been contended, at the beginning of the purchase by Higgins Company, that such purchase did not entitle that company to call on the lessee or his assignee to divide this renewal payment among purchasers of portions only of the leased property, it appears the demand was conceded by all parties, and that a division was made and acted on for more than a year, during which payments were made to the bank for the credit of the several purchasers of parts of the leased premises, and this would amount to an agreement that said parties were entitled to such division and as to the manner of the payments. But forfeitures are not favored. Even if not rent, the payment is sufficiently of that nature to make applicable thereto the rules governing forfeiture for nonpayment of rent. The contract here does not expressly provide that the payments shall be made before any given date.

Here, so far as the lessee was concerned, it had paid into the Liberty State Bank, as a renewal payment, the full amount required to keep the lease alive before the expiration of the time for which it was then running. It had deprived itself of all right to this sum so paid, and lodged it, for the purpose of extending the lease, with the original lessor, one of the payees thereof. Equity will usually relieve against a forfeiture for a mere failure to pay promptly. This is particularly true as to rents. Pomeroy, Eq. Jur. (4th Ed.) §§ 450, 453; Dodsworth v. Dodsworth, 254 Ill. 49, 98 N. E. 279.

We therefore hold that the court was right in refusing to reform said lease, so as to now embrace said 3.22 acres of land, because of the laches of the complainant, but that there was error in holding that said lease as to such part of said 17 acres as was embraced in the metes and bounds referred to therein was canceled, and in not decreeing that as to it the Empire Company was entitled to have it decreed that the defendant Higgins Company should receive the payments standing to its credit in the Liberty State Bank, and that there was no forfeiture of said lease for nonpayment.

The decree of the District Court is affirmed, so far as it refuses to reform said lease, so as to include said 3.22 acres, but is reversed as to holding that said lease is canceled as to the rest of said 17 acres, and the case remanded for further proceedings consistent with this opinion. The costs of said appeal are divided equally between appellant and Higgins Oil & Fuel Company, appellee.