**HAWKINS et al. v. KLEIN et al.**

No. 16631—Opinion Filed Oct. 12, 1926.

Rehearing Denied March 8, 1927.

1. **Indians—Statutory Authority of Quapaw Allottee to Make Business or Mining Lease.**

Under Act of Congress approved March 2, 1895 (28 Stat. at L. 907), as amended by Act of Congress approved June 7, 1897 (30 Stat. at L. 62-72), an Indian within the limits of the Quapaw Agency is authorized to make a mining or business lease upon allotted lands for a term not to exceed ten years, unless the Department of the Interior has, by some affirmative action with reference to the individual Indian, taken away the right conferred by the congressional act referred to, to make such lease.

2. **Landlord and Tenant—Death of Lessor —Forfeiture of Lease for Breach of Covenants—Necessity for All Heirs to Join in Election to Forfeit and Notice.**

Where a lessor dies leaving several heirs, all the heirs must concur and unite in an election to enforce a forfeiture on account of the breach of entire and indivisible covenants; and no one of the heirs, by virtue of his cotenancy only is authorized to act for his cotenants in enforcing a forfeiture; and an election to forfeit by one of the heirs only, or notice of forfeiture by one heir only, is insufficient to accomplish a forfeiture; but all must join in the election and notice.

3. **Same—Sublease—Additional Rights Acquired by Sublessee from Owners not Inuring to Benefit of Sublessors.**

Where the only relationship of H. to K. and associates was that of sublessee under them, and while in such relationship H. acquired additional rights in the property from the owners, held, that H. was not the confidential agent of K. and associates; and further held, that any such additional rights acquired by H. do not inure to the benefit of K. and associates.

4. **Judgment Sustained.**

Record held to support the judgment.

(Syllabus by Shackelford, C.)

Commissioners' Opinion. Division No. 4

Error from District Court, Ottawa County; J. J. Smith, Judge.

Action by Elmer E. Klein against Harry H. Hawkins et al. Judgment for plaintiff, and defendants Harry H. Hawkins, Charles Dawes, Beatrice Peters Schapp, Juanita Alma Dawes, and J. L. Suffecool, guardian ad litem, appeal. Elmer E. Klein et al. have filed a cross-appeal. Affirmed.

This suit was filed April 22, 1921, in the district court of Ottawa county. The suit involves mining and mineral rights in and to the south half (S.½) of the southeast quarter (S.E.¼) of section 14-29-23, in Ottawa county. The land was a part of the allotment of Minnie Ball Dawes, a Quapaw Indian woman, wife of Charles Dawes, who is not of Indian blood. On the 16th day of May, 1916, Minnie Ball Dawes, joined by her husband, executed a mining lease covering the said land to W. A. Moses. The lease provided for a royalty on the value of all minerals, amounting to 7½ per cent. thereof, and required drilling operations to begin on or before the 16th day of August, 1916, and thereafter continuous operation is required, except suspension of operation might be had not to exceed ten days in any two consecutive months without written consent of the lessors. There are embraced in the lease the usual conditions of mining leases, including means of forfeiture by giving ten days' notice in person or by mail, and by taking possession after notice given. The lease expired, by its terms, at midnight on the 15th day of May, 1926. A supplemental contract was made on the 16th day of March, 1917, providing that mining operators be carried on continuously, and should not be suspended at any time to exceed ten days in any one month without permission, unavoidable accidents, and acts beyond the control of the lessee, or temporary suspension because of low market price on concentrates excepted.

On the 1st day of October, 1917, H. N. Harris made a contract with Elmer E. Klein, agreeing to sell to him a mining lease upon the same property for a term of eight years, more or less, at a royalty of 12½ per cent. and a bonus of $75,000, to be paid in installments. A mining lease was executed, and with this contract was deposited in the Baxter State Bank, Baxter Springs, Kan. On the 11th day of October, 1917, Elmer E. Klein entered into a contract with T. P. Turner to sell him a mining lease covering the southeast quarter of the southeast quarter of 14-29-23, 40 acres covered by the original contract, at a 15 per cent. royalty, and a bonus of $75,000, to be paid in installments. On the 26th day of September, 1919, Elmer E. Klein signed a contract agreeing to convey to Harry H. Hawkins a mining lease covering the south half of the southeast quarter of the southeast quarter of 14-29-23, 20 acres of the land covered by the original lease, the contract being for a term of six months to prospect for ore, the prospecting to begin within 60 days. A part of the contract binds the said Elmer E. Klein to execute a lease for a term ending the

21st day of October, 1925, in case ore should be found in paying quantities, the royalty to be 15 per cent. of the market value of the ore extracted, such lease not to be in conflict with the lease made by Dawes and wife to W. A. Moses covering the same and other lands.

The wife of Charles Dawes, Minnie Ball Dawes, died on the 4th day of February, 1919, leaving surviving her as her sole heirs at law, Charles Dawes, her husband, and Beatrice Peters Schapp and Juanita Alma Dawes, her daughters. On the 23rd day of July, 1920, these parties entered into a mining lease contract with Harry H. Hawkins, leasing to him the 80 acres of land covered by the lease made by Charles Dawes and wife, Minnie Ball Dawes, to W. A. Moses; that is, the south half of the southeast quarter of 14-29-23, for a term ending July 23, 1930, and at a royalty of 10 per cent. of the market value of production. On the 6th of August, 1920, Juanita Alma Dawes and Beatrice Peters Schapp entered into a departmental mining lease contract with Harry H. Hawkins, leasing their two-thirds interest in the said land for a term of years ending on midnight, July 23, 1930, and at a royalty of 10 per cent of gross production of minerals extracted. This lease contract provides for certain acreage payments to be made year by year in advance, to the Department, for the benefit of the lessors, and to be treated as advance payment "on the stipulated royalties." This lease was approved by the Department of the Interior on January 25, 1922. On the 9th day of June, 1921, Charles Dawes and Hattie Dawes, his wife, deeded an undivided one-third interest in the south half of the southeast quarter of 14-29-23, to Harry H. Hawkins, for a consideration of $12,-000 recited in the deed.

On the 24th day of June, 1920, Charles Dawes issued' a notice of forfeiture to W. A. Moses, Elmer E. Klein, T. P. Turner, Harry Harris, H. H. Hawkins, and some ten others, advising that the parties had failed to comply with the terms of the lease made by him and his wife, Minnie Ball Dawes, to W. A. Moses, and that he had made re-entry.

On the 27th day of April, 1921, Elmer E. Klein filed an action in the district court of Ottawa county, against Harry H. Hawkins. Charles Dawes, Juanita Alma Dawes, a minor, Beatrice Peters Schapp, T. P. Turner, W. A. Moses, and some 13 other parties named, seeking to establish his mineral rights in the south half of the southeast quarter of 14-29-23 as against all the defendants named, and subject to the royalty rights of

the parties under whom he holds, and the valid, existing rights of the parties holding under him. He asserted rights under the lease made by Charles Dawes and Minnie Ball Dawes to W. A. Moses, and the lease contract made by H. N. Harris to plaintiff, and put in escrow in the Baxter State Bank, alleging performance of the conditions of both lease contracts; that he made a contract with defendant Harry H. Hawkins, through Charles Dawes granting certain prospecting and development rights in and to the south half of southeast quarter of southeast quarter of 14-29-23, and providing for a mining lease at the stipulated royalty of 15 per cent. of production, or the value, and relies upon such contract as against Hawkins in seeking to recover royalties. He attacks the lease contract made between Hawkins and Charles Dawes on behalf of himself and the daughters of Minnie Ball Dawes, and the departmental lease made by the daughters; and attacks the claim made by Dawes that the parties had forfeited their rights under the various lease contracts, and the re-entry or the rights to re-entry. He seeks to have his mining rights established by decree, and for judgment for royalties on ore marketed, and for general relief. Copies of the contracts upon which he relies are attached to the petition as exhibits thereto.

By way of amended answer of Harry H. Hawkins and Charles Dawes, to the petition of Elmer E. Klein, they, for answer, say: They admit the 80 acres of land was the property of Minnie Ball Dawes and part of her Indian allotment, and that she and her husband, Charles Dawes, executed a mining lease covering the land to W. A. Moses. They allege the death of Minnie Ball Dawes on the 14th day of February, 1919, leaving as her sole surviving heirs at law, Charles Dawes, her husband, and Beatrice Peters Schapp and Juanita Alma Dawes, her daughters. They further allege that on the 9th day of June, 1921, Charles Dawes sold and Hawkins purchased an undivided one-third interest in the lands, and that Hawkins is the owner of such interest. They attack the mining lease to W. A. Moses covering the land, because of alleged incompetency of Minnie Ball Dawes to make such mining lease. Harry H. Hawkins asserts his right to possession of the 80 acres of land by reason of his deed from Charles Dawes to a one-third interest in fee, and the mining lease executed by Charles Dawes, for himself and Beatrice Peters Schapp and Juanita Alma Dawes, on the 23rd of July, 1920, and the lease executed by Carl F. Mayer, Superin-

tendent of the Quapaw Agency on behalf of Beatrice Peters Schapp and Juanita Alma Dawes on the 6th of August, 1920, and approved by the Secretary of the Interior. Charles Dawes joins in this pleading. Hawkins and Dawes alleged that all rights of W. A. Moses and those claiming under him were forfeited and re-entry made; and reply upon such forfeiture and re-entry.

Thus, upon the part of the plaintiff Elmer E. Klein, it is contended that the lease made by Charles Dawes and Minnie Ball Dawes, to W. A. Moses, covering the 80 acres of land, was and is in full force and effect, and that the rights of plaintiff acquired through W. A. Moses have never been impaired, and that he is entitled to have his mining rights established by decree of the court, and to a judgment for such sums as may be due for royalties upon ores extracted by the parties in possession claiming adverse to plaintiff; and also the plaintiff contends that Harry H. Hawkins is in and retains possession of the property by reason of being plaintiff's lessee, and is estopped to claim adversely to him; also that Hawkins was in a partnership relation with Charles Dawes in reference to the land and mining rights under such circumstances that plaintiff should benefit by any extension of mining rights secured by Hawkins from the heirs of Minnie Ball Dawes beyond the limitation of the lease made by Dawes and wife to W. A. Moses.

The defendants Hawkins and Dawes contend that the lease made to W. A. Moses by Dawes and wife, under which the plaintiff claims, was invalid from its inception by reason of restrictions upon the right of Minnie Ball Dawes to lease the land, and that the plaintiff and those under whom he claims were all forfeited out by proper forfeiture proceedings, barring any rights they may have originally acquired under the Dawes-Moses lease; and combat the contention that a partnership relation existed between Hawkins and Dawes, and that there is no basis for plaintiff's claim that any extension of Hawkins' mining rights beyond the expiration of the Moses lease should inure to the benefit of the plaintiff.

The trial resulted in a judgment for the plaintiff, upholding the validity of the lease made by Dawes and his wife, Minnie Ball Dawes, to W. A. Moses, and denying the contention of defendants that the rights acquired by plaintiff under the Moses lease had been forfeited; and rendered judgment for plaintiff against defendant Harry H. Hawkins, "for an amount of royalties equal to 15 per cent. of the gross value of all ores

taken and removed from said property by the defendant Harry H. Hawkins (or any party through him), less any royalties which the defendant Hawkins may have paid to Charles Dawes, Juanita Alma Dawes, and Beatrice Peters Schapp, and not exceeding 7½ per cent.," and decreeing any such sum to be a lien upon any appurtenances upon the property belonging to Hawkins; and ordered an accounting. The trial judge refused to find that rights acquired by Hawkins in his dealings with the heirs of Minnie Ball Dawes in the land, or mining rights, beyond the expiration of the Dawes-Moses lease should inure to the benefit of the plaintiff.

The defendants Harry H. Hawkins, Charles Dawes, Beatrice Peters Schapp, and Juanita Alma Dawes, appeal from the judgment upholding the validity of the Dawes-Moses lease and denying the forfeiture thereof, and the judgment against Hawkins for royalty and ordering an accounting. Elmer E. Klein and some of the parties interested with him, being referred to as W. A. Moses and associates, have filed a cross-appeal attacking that part of the judgment of the trial court denying the plaintiff and his associates the benefit of extension of mining rights secured by Hawkins in his dealings with the heirs of Minnie Ball Dawes beyond the expiration date of the Dawes-Moses lease.

O. F. Mason, for plaintiffs in error.

Vern E. Thompson and M. W. Hinch, for defendants in error.

Opinion by SHACKELFORD, C. The first contention of the plaintiffs in error is that the mining lease executed by Charles Dawes and his wife, Minnie Ball Dawes, under which lease the plaintiff, Elmer E. Klein, claims, is invalid and void because the property covered by the lease was a part of the Indian allotment of Minnie Ball Dawes, a restricted Quapaw Indian woman, and her restrictions had not been removed, nor the lease authorized or approved by the Secretary of the Interior; and that without such action by the Secretary of the Interior, she (Minnie Ball Dawes) was not legally authorized to execute the character of lease secured by W. A. Moses. They contend that Minnie Ball Dawes, a duly enrolled Quapaw Indian within the limits of the Quapaw Agency, received the lands as a part of her allotment, subject to restrictions against alienation thereof for a period of 25 years, as provided by Act of Congress approved March 2, 1895 (28 Stat. L. 907). The act referred to, as amended by Act of Congress approved June 7, 1897 (30 Stat. L. 62-72), is as follows:

"That the allottees of land within the limits of the Quapaw Agency, Indian Territory, are hereby authorized to lease their lands, or any part thereof, for a term not exceeding three years, for iarming or grazing purposes, or ten years for mining or business purposes. And said allottees and their lessees and tenants shall have the right to employ such assistants, laborers, and help from time to time as they may deem necessary: Provided, that whenever it shall be made to appear to the Secretary of the Interior that, by reason of age or disability, any such allottee cannot improve or manage his allotment properly and with benefit to himself, the same may be leased in the discretion of the Secretary, upon such terms and conditions as shall be prescribed by him."

It seems that under this congressionai act, Minnie Ball Dawes, an Indian woman within the limits of the Quapaw Agency, was authorized to lease her land for mining purposes or a term of ten years, unless it had been made to appear to the Secretary of the Interior that by reason of age or other disability she was unable to manage her allotment; if so, then the leasing was within the discretion of the Secretary of the Interior. It seems that this act gave authority to the allottee to convey mining rights by lease not exceeding ten years, unless it was or had been made to appear to the Secretary of the Interior that the allottee was incapable of managing her allotment. The question here is, Had the Secretary of the Interior taken the leasing of this land for mining purposes out of the control of the allottee, Minnie Ball Dawes?

The plaintiffs in error seem to rely upon section 11 of the regulations issued by the Department of the Interior in January, 1907, for an affirmative answer to this question, asserting that she is listed as an incompetent in said section 11. In this section of the regulations, a number of Indians are listed as incompetents; and the defendants in error admit that this Indian woman (Minnie Ball Dawes) is included in the list. After further consideration by the Department of the Interior of the competency of the Indians listed, it seems that further regulations were promulgated by the Department and the list revised, and the individual Indians classified, and Minnie Ball Dawes was not included in the list of incompetents. This revised classification seems to have been made in the latter part of 1907. It seems that Minnie Ball Dawes was permitted to lease her land without interference by the Department of the Interior until as late as about April, 1918, when she was declared to be "incompetent with respect to mining and business leases." The order is dated

April 5, 1918. There seems to be no intimation in the order that the order should operate retroactively, even if the Department is clothed with power to make the order retroactive. From this last order Minnie Ball Dawes herself appealed to the Department of the Interior to again classify her as competent, and in her appeal she calls attention to the lease contract made with W. A. Moses by way of showing her ability to transact her own business affairs.

We conclude, upon this record, that on the 16th day of May, 1916, Minnie Ball Dawes was regarded by the Department of the Interior as competent to execute the mining lease she made in favor of W. A. Moses on said date, and that her status of competency remained until the Department of the Interior made the incompetency order against her as of April 5, 1918. Approval by the Department of the Interior was not essential to make the said lease contract a valid lease, under the circumstances appearing in this record.

The second contention made is that the Dawes-Moses lease was forfeited; and that the findings of the trial court that the lease was not forfeited, but was in force and effect, are against the clear weight of the evidence. The Dawes-Moses lease provided what should constitute grounds of forfeiture, and how forfeiture should be accomplished. The grounds of forfeiture consisted in failing to mine, pay royalty, allow examination of the books, failure to keep the books in proper form, to refuse examination of the mining premises, or to fail to perform the conditions of the contract, all as provided in the lease. The means of forfeiture provided for are:

"The parties of the first part may declare this lease forfeited by serving notice upon the party of the second part, either in person or through the mail at the last known address of the party of the second part, heirs or assigns, stating that said lease has been forfeited, and thereupon may take immediate possession," etc.

Thus, grounds of forfeiture must, in fact, exist, and the notice be given. This lease contract was made on the 16th day of May, 1916, and Minnie Ball Dawes and Charles Dawes were parties of the first part, and W. A. Moses was party of the second part in the execution of the lease. Minnie Ball Dawes, one of the parties of the first part, died on about the 4th day of February, 1919, leaving as her sole heirs at law Charles Dawes, her husband, and Beatrice Peters Schapp and Juanita Alma Dawes, her daughters. From the death of Minnie Ball Dawes these, her heirs, were in the position of own-

ers of the rights acquired by parties of the first part in the Dawes-Moses lease. The record tends to show that on the 24th day of June, 1920, a forfeiture notice was issued by Charles Dawes alone, addressed to W. A. Moses, Elmer E. Klein, Harry H. Hawkins, and some 12 other parties named in the notice, calling the attention of these parties to a certain provision in the lease, as follows:

"That mining shall be carried on in good faith continuously and shall not be suspended at any time to exceed ten days in any two consecutive calendar months, without written permission of the lessors or their agent"

—and to the further provisions of the lease that if the conditions of the lease have not been complied with, the lessors are authorized to take immediate possession without notice to quit or demand for possession, and notifying the parties named that the lessee and assigns have "wholly failed to mine said land in good faith or in any manner provided by said contract," and further notifying the parties "that the said lessors have elected to and have re-entered upon the said lands and all mining rights under said lease are declared forfeited and canceled." The notice is signed "Charles Dawes," and acknowledged by him; and the notice is filed of record as of the 24th of June, 1920, and recorded. The evidence tends to show that copies of this notice were mailed to the parties named in the notice at their last known addresses. This is the notice of forfeiture upon which the defendants Hawkins and Dawes rely. The court found such notice to be insufficient. If this notice was insufficient, there seems to have been no forfeiture. It seems from this record that the land involved was property belonging exclusively to Minnie Ball Dawes. She, joined by her husband, Charles Dawes, had executed the Moses lease. She died before the grounds of forfeiture had been committed, if, in fact, there existed grounds of forfeiture, and before the notice was issued and served. After her death her husband, Charles Dawes, and Beatrice Peters Schapp and Juanita Alma Dawes, her daughters, took the property by inheritance, being her sole heirs, and they were co-owners of the land and rights accruing under the lease. These three heirs of Minnie Ball Dawes were then cotenants, each equally interested with the others in the property and rights accruing. The question then is. Was the forfeiture notice issued by Charles Dawes, one of the cotenants alone, sufficient as a forfeiture notice?

In Howard v. Manning, 79 Okla. 165, 192 Pac. 358, this court had under consideration a similar question, and held:

"All the heirs, or their successors, must concur and unite in an election to enforce the forfeiture on account of the breach of entire and indivisible covenants."

And further held that:

"Neither tenant in common has, by virtue of his relationship to his cotenant in common, any authority to act as agent for his companion in either giving a lease or enforcing a forfeiture thereof."

All the heirs must concur in the election to enforce the forfeiture, and no one of them may, by virtue of his relationship as a cotenant, "act as agent for his companion." Charles Dawes did not even assume to act as agent for Beatrice Peters Schapp and Juanita Alma Dawes, his cotenants. He was acting for himself alone. Upon the authority of the cited case, the notice issued by Charles Dawes alone, a cotenant and not sole owner, was a nullity, and did not effectuate a forfeiture; and the trial court correctly so held.

There being no sufficient notice of forfeiture, it seems unnecessary to examine the record to determine the question of whether or not grounds of forfeiture actually existed. It appears certain from this record that the defendant Harry H. Hawkins began mining operations upon this land under a contract with plaintiff Elmer E. Klein, who himself held under W. A. Moses, the original lessee. Under this contract with plaintiff, it appears that defendant Harry H. Hawkins had placed mining machinery and had carried on rather extensive mining operations upon the land. It seems that such operations were being carried on up until within a few days before the forfeiture notice was given; and the machinery was there upon the ground just as it had been used in the mining operations at the time the defendant Charles Dawes claims to have made a re-entry. Dawes was operating the machinery when Hawkins came back upon the lease, but desisted at the direction of Hawkins. It seems that an amicable agreement was entered into between Hawkins and Dawes, and they operated the lease together. It was about this time, or shortly afterwards, that Hawkins and Dawes and the daughters of Minnie Ball Dawes entered into the lease contracts above referred to, and Hawkins bought out Dawes' interest in the land.

The trial court found that sometime after defendant Hawkins had taken possession of the property under his contract with the plaintiff, that he (Hawkins) and Charles Dawes had entered into a partnership agreement affecting the mining property, and that such partnership arrangement existed during

the time that Hawkins was off the lease and at the time Dawes claimed to have made the re-entry. This finding seems to be supported by the record.

We conclude that the findings of the trial court, that the mining rights of Moses and associates under the Dawes-Moses lease were not forfeited, and that the rights asserted by them remained intact, are amply supported by the record; and that the judgment in favor of the plaintiff and against the defendants is amply supported.

Upon the cross-appeal by Elmer E. Klein et al., it is contended that they are entitled to a judgment of the court giving them the benefit of any mining rights secured by defendant Hawkins in his dealings with Charles Dawes and Beatrice Peters Schapp and Juanita Alma Dawes, extending the mining lease beyond the expiration of the Dawes-Moses lease. The Dawes-Moses lease expired by its own terms at midnight of the 15th day of April, 1926. By the terms of the contract secured by defendant Harry H. Hawkins from the daughters of Minnie Ball Dawes, he holds mining rights in and to this land until midnight on the 23rd day of July, 1930. This contract was approved by the Department of the Interior. It seems that Hawkins had purchased outright the interest of Charles Dawes in the land involved. The parties to the cross-appeal present the contention that such extension to July 23, 1930, should inure to their benefit; and that the lessee named in this lease contract should be adjudged to be a trustee for them; and that the trial court erred in refusing to enter such judgment.

It seems that no such contention was presented by the original pleadings. After the parties had rested, plaintiff moved for leave to amend the pleadings and prayer seeking the relief now contended for; and the pleadings were permitted to be so amended, or were treated as amended: but the prayer was denied. This ruling and judgment of the trial court is assigned as error in the cross-petition in error.

It seems plain from an examination of the decree entered by the trial court that every right had and held by the plaintiff, or by Moses and associates, under the Dawes-Moses lease, has been secured to them by the decree. The effect of the decree is to hold that the Dawes-Moses lease was a valid, binding mining lease contract from its inception to midnight on the 15th day of May, 1926. The effect of the judgment is to require Hawkins to settle with plaintiff and Moses and associates according to the terms of his sublease without any reference whatever to his contract with Beatrice Peters Schapp and Juanita Alma Dawes. Hawkins was a sublessee, not a partner with the plaintiff or Moses and associates. He occupied no confidential relationship with them or any of them. He and the plaintiff and Moses and associates had dealt at arm's length in the sublease contract. He owed them the duty to perform the obligations imposed upon him by his sublease, and no more. He seems to have thought that conditions arose that released him, but the court thought otherwise; and by the judgment he is required to perform his contract. Have the plaintiff and Moses and associates greater rights than the original lease and the sublease to Hawkins gave them? It would seem not. The rights of the various parties had been mutually agreed upon and expressed in the several contracts. The contract between Hawkins and the daughters of Minnie Ball Dawes, approved by the Department of the Interior, as we understand the instrument, was in no sense a renewal of the original lease or a continuation of its terms. It was and is plainly a new, separate, and independent contract, imposing its own burdens upon the new lessee. These burdens have been sustained by Hawkins alone. He must hereafter sustain them in compliance with his contract. He has, no doubt, paid the stipulated royalty fixed in the new lease, and has otherwise performed the contract. There seems to be no complaint that this has not been done. But he is also required to pay the royalties stipulated in his sublease. There seems to be no purpose in the mind of plaintiff or his associates to help bear the burden that has secured the new and additional advantages, after the expiration of the old lease. Since the execution of the new lease, Hawkins has complied with its terms; and the judgment requires him to perform the conditions of the old lease. Why should he be further penalized?

Some authorities are cited by cross-petitioners in error, but they seem to deal with confidential agents of the lessee, and secret rights secured by him while the confidential relationship existed. As has been pointed out, Hawkins was a sublessee and not a confidential agent of plaintiff, or of Moses and associates. We think the cited cases are not applicable here.

The cross-petitioners seem to claim that they have an equity of renewal of their lease. Any renewal of their lease would depend entirely upon the voluntary contract made by the parties. Their lease, by its own terms,

expired at midnight on the 15th day of May, 1926. There is no stipulation in the contract for a renewal. W. A. Moses, in getting the lease, dealt with Charles Dawes and Minnie Ball Dawes. At the death of Mrs. Dawes, Charles Dawes, Beatrice Peters Schapp, and Juanita Alma Dawes became the successors in interest of Mrs. Dawes. It seems that Charles Dawes inherited a one-third interest in the property, including the rights under the Dawes-Moses lease. So far as anything appears, Charles Dawes had a legal right to dispose of such interest and rights as he saw fit. We know of no legal impediment in the way of his selling such interest and rights. Any sale he made would be subject to the Dawes-Moses lease, which definitely fixed the date of expiration. No reason is pointed out, and we know of none, why Harry H. Hawkins, although a sublessee, should not buy such interest. On the 9th of June, 1921, Charles Dawes sold and Hawkins bought Dawes' interest in the property. Up until the death of Minnie Ball Dawes, the lessees, plaintiff and Moses and associates, were dealing with her as owner of the property. After her death and until the 9th of June, 1921, plaintiff and Moses and associates were dealing with Charles Dawes and the daughters of Mrs. Dawes as the owners. After that date, and until the expiration of the original lease, they were dealing with Hawkins and the daughters of Mrs. Dawes as owners. Hawkins and these daughters were holding subject to the original lease until it expired by its terms according to the judgment of the court in favor of the plaintiff.

It seems plain that Hawkins has, no time since he became part owner of the property, had any purpose in mind of renewing the original lease, and no good reason appears why a court of equity should now step in and compel him to make a renewal contract with plaintiff and Moses and associates without his consent, over his objection, and entirely against his will and to his financial detriment and loss. This would be the obvious effect of a decree declaring him to be the trustee of plaintiff and Moses and associates until the expiration of his contract with Beatrice Peters Schapp and Juanita Alma Dawes, and adjudged them to be entitled to a 7½ per cent. royalty on all ores extracted after the expiration of the original lease and until the expiration of the new lease, as is prayed for by them.

The court compels performance of the conditions of the sublease until it expired by its own terms. It seems that since execution of the new lease Hawkins has also had the burden of performing its conditions. By the judgment of the court Hawkins is compelled to pay to plaintiff and Moses and associates 7½ per cent. of all ores extracted until the expiration of the original lease, or until midnight, April 15, 1926. Since August 6, 1920, the date the new lease was made, he has likewise performed the conditions of the new lease by paying a royalty of 10 per cent. of the ores extracted.

We think the trial court was correct in finding that Hawkins' mistake in concluding that the old lease had been abandoned and forfeited was not sufficient reason for compelling him to continue the payment of royalties provided for in both leases after the old lease had expired.

The prayer of the cross-petitioners in error is denied.

The judgment of the trial court is, in all things, affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 517. §84. (2) 35 C. J. p. 1063, §233; p. 1076, §248. (3) 35 C. J. p. 1227, §566 (Anno). (4) 4 C. J. p. 1129, §3122.