**GORDON et al. v. EMPIRE GAS & FUEL
CO. et al.**

No. 6612.

Circuit Court of Appeals, Fifth Circuit.
Feb. 17, 1933.

Rehearing Denied March 20, 1933.

W. D. Gordon and E. E. Easterling, both
of Beaumont, Tex., Chas. C. McRae, of Hous-
ton, Tex., and J. Llewellyn, of Liberty, Tex.,
for appellants.

David B. Trammell, of Fort Worth, Tex.,
and Will E. Orgain, of Beaumont, Tex., for
appellees.

Before BRYAN, SIBLEY, and
HUTCHESON, Circuit Judges.

488

SIBLEY, Circuit Judge.

Out of a welter of cross-pleadings in equity emerges the controlling question whether appellants can still assert overriding royalty rights reserved in transferring an oil and gas lease made by the guardian of three minors, now that the minors have become 21 years of age. The District Court held that the lease ended as to each ward at his majority, and thereupon the royalties arising on that ward's interest in the land ceased. The lease is of a type common in Texas, permitting exploration for oil, gas and other minerals on the lands of the minors for a stated period, and, if any are found, the lessee is to be entitled to remove them on paying a fixed royalty so long as produced in paying quantities. It was executed by the guardian March 4, 1916, by authority of an order of the county court granted the same day. On November 17, 1917, an assignment of it was made to Empire Gas & Fuel Company with reservation of the royalties here claimed by appellants, in addition to that due to the lessor. Oil was soon after discovered. On May 8, 1918, the guardian by court order sold the mineral interest remaining in the minors in part of the lands. The minors respectively became of age December 26, 1926, August 11, 1928, and May 28, 1930. Immediately dispute arose whether as to the interest of each the lease continued longer. Empire Gas & Fuel Company sought to protect itself by a proceeding in the county court for an additional lease, and by taking leases from each minor after he reached 21 years of age, and from the vendee of May 8, 1918. In the present suit every one except appellants contends that, as each minor reached 21 years of age, the lease ended as to him, not because the lease said so, but because the statute of force when it was made said so. The appellants contend that it is not a lease at all, but a sale, and not governed by the statute regulating mineral leases of lands of minors, and that, on discovery of oil, a title in base fee to the minerals vested in the lessee and his assigns as against the minors, and that subsequent leases by or for them do not displace the first lease, and, if not, a change in the law in 1919 had that result, and, in any case, the assignee, Empire Gas & Fuel Company, must give to its assignors the benefit of the subsequent leases and is bound by the language of the assignment to pay the royalties reserved therein so long as oil is produced from the land.

There were in 1916 old statutes authorizing the county court, which by the Constitution of Texas, art. 5, § 16, has general jurisdiction to transact business pertaining to the estates of minors, to sell their lands, but only in stated cases of virtual necessity. Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 4155. The procedure is specified. Article 4156 et seq. It is now settled, though it was not then, that an agreement such as that before us is a conveyance on the conditions stated in it of an estate in the minerals in place in the soil, though they be fugitive oil and gas, rather than a mere right to use the land to capture them, and that, where the agreement extends to the exhaustion of the minerals, the estate is a base fee therein. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27. Furthermore, such agreements have in consequence been held to be sales within the constitutional and statutory provisions for the sale of the University lands. Theisen v. Robison, Commissioner, 117 Tex. 489, 8 S.W.(2d) 646. It may be true, as appellants contend, that the agreement here in question, although complicated by options and conditions and differing greatly from the usual sale for a fixed money consideration upon no condition save the payment of the purchase price, might have been authorized under the old statutes. But the fact is that in 1915 (Acts Tex. 1915, c. 44), superseding similar legislation of 1913, a statute was passed directly and specially authorizing and regulating the making by guardians of "mineral leases," referred to in later acts as "oil and gas and other mineral leases," on the lands of their wards. The procedure specified is sworn application, one week's published notice, hearing, and order "authorizing the guardian to make such mineral lease, and the terms upon which it shall be made; provided, that no lease shall extend beyond the time that the ward shall become twenty-one years of age." Section 2. In making the present lease, this procedure was exactly followed, a copy of the proposed lease being attached to the application. The application was to make "a mineral lease." The order authorized the execution of "a mineral lease" and the paper executed refers to the order as one to execute "a mineral lease." We do not stop to inquire whether the procedure was also sufficient to support the transaction as a sale of the minors' minerals under the old statutes, because we think the proviso above quoted is controlling under any form of procedure. The Legislature may regulate the disposal of the lands of minors, conditioning or even prohibiting it. It did

by this act prohibit a disposal by "mineral lease" beyond the ward's minority. Neither the contract of the guardian nor the order of the court could annul the statute. That the present instrument is a "mineral lease" we have no doubt. It was so called throughout its making, and in the assignment under which appellants claim. Therein the lessor does "demise, let and lease" the land to be exploited, and also does "grant and convey all of the oil and gas and other minerals in and under the land" on certain terms and conditions. It continues: "It is the understanding of the parties hereto that this agreement has assigned nothing to the lessee except a franchise for the development of the mineral resources for the time specified and the option to extend such privileges, but it is understood that in the event the lessee or his successors and assigns should sink a well and discover either oil or gas or other minerals in paying quantities on the premises herein leased, then the said lessee shall become at once invested with an estate in and to all the minerals underlying such land, with the exclusive right to produce the same so long as such minerals can be produced in paying quantities, paying to the lessor however the royalties above described." This same language was in the instrument in Empire Gas & Fuel Co. v. Higgins Oil & Fuel Co. (C. C. A.) 279 F. 977, and this court referred to it always as a lease. In Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. at page 172, 254 S. W. 290, 29 A. L. R. 566, the Supreme Court declares it makes no difference whether the instrument by its words gives the right to mine and appropriate the minerals, or demises the land with such right, or conveys the minerals. The substantial result is the same. Agreements permitting the use of the land to explore, and then if mineral is discovered giving the right to take the mineral either for a definite term or so long as it can be produced in paying quantities upon a reserved royalty, are familiar, and in legislative and judicial as well as in common speech are called mineral leases for want of a better name. They are called leases in the very cases which hold them to convey a base fee. In Theisen v. Robison, Commissioner, 117 Tex. at page 508, 8 S.W.(2d) 646, 651, they are referred to as well known: "In legal effect, the grants authorized by the acts are not essentially different from the grant in the ordinary oil and gas lease such as was before the court in the Stephens County Case. The ordinary lease confers first an option to explore for oil or gas, but after discovery of oil or gas in pay-

ing quantities it confers the right to produce and appropriate the oil or gas. * * * Under the ordinary lease the right to continue to produce and appropriate oil or gas is contingent on performance of similar obligations. It is unthinkable to treat the ordinary lease as conveying minerals in place and to refuse to give that effect to the grants authorized by these acts." We think the instrument before us is a mineral lease such as was referred to in the act of 1915, and that to its words above quoted the statute therefore adds the words, "Provided this lease shall not extend beyond the time that any ward shall become twenty-one years old." The parties in contracting must be held to have so intended. Northern Pacific Ry. Co. v. Wall, 241 U. S. 87, 36 S. Ct. 493, 60 L. Ed. 905; Abilene National Bank v. Dolley, 228 U. S. 1, 33 S. Ct. 409, 57 L. Ed. 707; American Insurance Union v. Lowry (C. C. A.) 62 F.(2d) 209; Globe Indemnity Co. v. Barnes (Tex. Com. App.) 288 S. W. 121. Provisions inconsistent with the statute are void. First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S. W. 550. The lease ended as to each minor on his becoming 21 years old.

The act of 1919 (Acts Tex. 1919, c. 119) repealed the act of 1915, but re-enacted its substance and made the proviso to read thus: "Provided, that in the case of such leases executed by guardians of minors, no lease shall extend beyond the time that the ward shall become twenty-one years of age, unless at that time the lessee shall have discovered such minerals as are specified in the lease, or any of such minerals, upon the premises described in such lease, in which event the same shall remain in full force so long as such minerals or any * * * of them shall be produced in paying quantities." Section 2.

The act makes no plain reference to leases previously made. They depend for their construction and effect on the laws of force when they were entered into. The act of 1919 does not purport to be retroactive so as to change the substance of past contracts, if such a change were possible, but is ordinary legislation operating in futuro. It has no effect on this lease. Union Pac. R. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 S. Ct. 101, 58 L. Ed. 179; Cameron v. United States, 231 U. S. 710, 34 S. Ct. 244, 58 L. Ed. 448; White v. United States, 191 U. S. 545, 24 S. Ct. 171, 48 L. Ed. 295; U. S. Fidelity & Guaranty Co. v. U. S. for Use and Benefit of Struthers Wells Co., 209

U. S. 306, 28 S. Ct. 537, 52 L. Ed. 804; McEwen v. Dem ex dem. Bulkley, 24 How. 242, 16 L. Ed. 672.

Empire Gas & Fuel Company did nothing to end the lease or to escape from its royalties, but, understanding that its rights as assignee would terminate at the minors' respective majorities, protected itself by new leases. These do not operate in any wise for the benefit of the assignors. They cover a different term. There is between assignor and assignee as such no partnership or relation of trust that prevents the assignee from acquiring independent rights to be effective after the expiration of the assigned lease. Robinson v. Eagle-Picher Lead Co., 132 Kan. 860, 297 P. 697, 75 A. L. R. 840; Hawkins v. Klein, 124 Okl. 161, 255 P. 570; Henry v. Gulf Refining Co., 179 Ark. 139, 15 S.W.(2d) 979; Thayer v. Leggett, 229 N. Y. 152, 128 N. E. 133.

The suggestion is made that the assignment contains a covenant which binds the assignee to pay the overriding royalties which are part of the consideration for the assignment so long as oil is produced from the land, whether under the assigned lease or any other. Such an agreement is not impossible, but, since ordinarily it would mean the payment of double royalties, it ought to be clearly established and not lightly inferred. The language of the assignment which covers the Barngrover lease here involved, and also another, is:

"It is further agreed and understood that the Empire Gas & Fuel Company shall pay to the said Marrs McLean a 1/32 part of all oil and gas and minerals produced on the 43 acre Barngrover *lease* herein assigned, and a 1/36 part of all oil, gas and minerals produced on the J. M. and Hannah Barrow *tracts of land,* leases on which are hereby assigned, and shall pay to Dan J. Harrison a 1/96 part of all oil, gas and minerals produced on said Barngrover *lease,* and a 1/72 part of all oil, gas and minerals produced on the J. M. and Hannah Barrow *tracts of land,* lease of which is hereby assigned; the delivery and payment of said royalties to be made in conformity with the terms of the original leases herein assigned, and the royalties to be paid by said Empire Gas and Fuel Company in the same manner that royalties are paid to the owners of said lands."

There is a difference in the language used in referring to the Barngrover land which may indicate that as to it at least no royalties were due the assignors except under the assigned lease. The reference to the existing leases to fix the terms and manner of paying assignors' royalties in conformity with that of owners' royalties indicates that, when the latter should cease, the former were to cease also. We think no covenant is made out to pay any royalties after the expiration of the lease.

Judgment affirmed.