pellant sought for a position as laborer in the state service (a lock-tender was a laborer); and, under section 9 of the civil service law, no examination or registration could be required of persons to be employed as laborers in the state service. There was therefore no list upon which the appellant could get or have any standing from which the appointment he sought would be made. There was no way in which his qualification and fitness could be ascertained. He could not, therefore, bring himself within the statute in question, so as to entitle him to the preference provided therein. The statute in its language follows the constitution, and the difficulty with the appellant under both is that he can claim preference only in case his qualification and fitness shall have been ascertained as provided in the act and the rules and regulations in pursuance thereof, and that could not be done under the act or such rules or regulations. The preference under the statute was apparently not intended to cover laborers in the state service. To hold otherwise would be to do violence to the language of the statute. The claim of the appellant seems to be that a soldier, sailor, or marine seeking employment as a laborer in the state service is to be presumed to be qualified and fit for such service, whether he is so or not. There is no way to ascertain that he is. The superintendent of public works may not determine the question himself, and refuse to employ a person because not qualified or fit. He must employ him any way. We cannot assent to such a construction. The class of unskilled laborers, under the act, were favored by being exempted from examination as to qualification and fitness, and by such favor they were taken out of the provision for preference for employment provided by section 20 of the act.

This was the view evidently taken by the trial court, and we think the case was correctly decided, and that the judgment appealed from should be affirmed, with costs. All concur.

---

## CRITTENDEN & COWLER CO. v. COWLER.

(Supreme Court, Appellate Division, Third Department. November 13, 1901.)

CORPORATION LESSEE—END OF TERM — EXPECTANCY OF RENEWAL — LEASE BY DIRECTOR—BREACH OF TRUST—INJUNCTION.

A corporation occupied certain leased premises as assignee of a lease. Before its term expired it sought a renewal, which was expressly refused by the landlord. Afterwards a director secured a lease, covenanting, under bond, against subletting and assignment thereof. *Held*, that the expectancy of renewal belonging to the corporation ceased with the landlord's express refusal to renew, so that the director's action in securing the subsequent lease was not such a breach of trust as would entitle the corporation to enjoin him from interfering with its possession.

Appeal from special term.

Suit for an injunction by the Crittenden & Cowler Company against Benjamin S. Cowler. From an order granting an injunction pendente lite restraining the defendant from assigning, surrendering, or disposing of a lease, and from taking any proceedings thereunder to eject plaintiff from the leased premises, and from in any

way .interfering with plaintiff's enjoyment of the full benefit of such
lease as though made to it as lessee, the defendant appeals.    Re-
versed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS,
SMITH, and CHASE, JJ.

Ashley & Williams, for appellant.
S. & L. M. Brown, for respondent.

KELLOGG, J.   It appears from the moving papers: That plain-
tiff is a domestic corporation engaged in the business of selling at
retail stationary, wall paper, etc., in Glens Falls, N. Y.   That the
lease of the store it occupied and did business at expired May 1, 1901.
That defendant and one James W. Barber were at that time, and
for some months prior thereto, the sole directors of said corpora-
tion.   That Mr. Barber had control of the majority of stock of
said corporation.   That for some time prior to May 1, 1901, a feud
existed between these directors.   That Mr. Barber threatened to
deprive defendant of the management of the corporate business.
That Mr. Barber first applied to the landlord for a new lease run-
ning to the corporation; the corporation never having a lease from
the landlord, but having occupied under a lease assigned to it by a
former lessee.   That, soon after the application for a lease made
by Mr. Barber, the defendant applied for a lease in his own name.
Thereupon the landlord made a journey from his residence in Pough-
keepsie to Glens Falls to investigate the situation.   At Glens Falls
the landlord had a meeting, at which was represented the defend-
ant, Mr. Barber, and all the stockholders of the corporation.   The
propriety or wisdom of leasing the premises to the corporation
seems to have been fully considered at that time by the landlord,
and he seems to have reached the determination not to lease to the
corporation.   He refused its application for a lease, saying "that he
had never recognized the corporation as his tenant, and that he
would not recognize it now."   The lease in question .was there-
after, and upon the same day (April 29, 1901), made with defendant.
The lease covenants against subletting and against assigning the
lease of the premises called the "Store."   A bond with surety was
exacted of the defendant by the landlord, and was furnished for
the faithful performance of all the covenants of the lease.   This case
presents material facts which distinguish the case from any reported
case brought to our attention.   Here there was no secret leasing,
no act done "behind the back."   Here we have a positive refusal on
the part of the landlord to accept the corporation as a tenant.   This
refusal, after application made and considered, disposed of and cut
off that "expectancy" which is declared by some authorities to run
with every lease,—the expectancy of a renewal.   This has been
deemed a species of property in the lessee, and a copartner or one
standing in any fiduciary capacity is not permitted to profit by taking
a renewal in his own name while this expectancy exists.   But the
rule ceases to operate when such expectancy no longer exists.   It
will hardly be claimed that a landlord may not exercise his own

discretion in the selection of a tenant.  He may or may not renew, as he chooses.  When once he has declared against renewal, the tenant, then in occupation, has no more an expectancy which can be dealt with.  Whoever thereafter leases does the tenant no injury, and takes from him no property or property rights.  I see no reason in law or equity in excluding a copartner or a director in a corporation from dealing with the landlord in respect to the premises after a renewal to the occupying tenant has been refused by the landlord.  The terms of the lease in question are presumably the terms insisted upon by the landlord.  As between the landlord and this defendant the lease is binding.  There can be no subletting and no assigning without the landlord's consent.  This would seem to place the interference by the courts to force a subletting to the plaintiff, and to make a tenant for the landlord without his consent, as quite beyond its powers.  Under the facts in this case, whatever redress the plaintiff may have, it does not seem to me that it can have the right to occupy these premises as tenant without first getting permission of the landlord.  Therefore, to enjoin the defendant against performance of the letter of his lease, and enjoining interference in the occupancy by the corporation of these premises, is to install a tenant in spite of the covenants of the lease, and to interfere with contract relations in a way unprecedented and unwarranted by the facts here disclosed.

The order should be reversed, with $10 costs and disbursements, and motion for injunction denied, with $10 costs.  All concur.