[Civ. No. 6915.  Fourth Dist.  Mar. 25, 1963.]

JOHN M. FERRY, Plaintiff and Appellant, v. JOHN A. McNEIL, Defendant and Respondent.

Sullivan, Sullivan & Fox for Plaintiff and Appellant.

Yale, Wilson, Summers & Yale and William A. Yale for Defendant and Respondent.

GRIFFIN, P. J.—Plaintiff-appellant John M. Ferry brought this action for declaratory relief against defendant-respondent John A. McNeil seeking a declaration of the rights of the respective parties.

## FACTS

Defendant McNeil obtained a lease from one Dan Rossi to extract sand, rock and gravel from real property (parcel one) known as Slaughterhouse Canyon, which lease expired September 5, 1961 and was renewed by him, under option contained therein, until September 4, 1966.

McNeil, on November 3, 1958, also obtained a lease from California Water and Telephone Company to extract sand, rock and gravel from an area known as Sweetwater River Bed (parcel two), which lease expired October 14, 1961. There was no option to renew this lease.

Plaintiff Ferry testified that he was, at the time of trial, dealing with Mr. Rossi in reference to renewing the lease on the Slaughterhouse Canyon property (parcel one) and was endeavoring to obtain the lease in his own name.

Defendant calls our attention to plaintiff's testimony on cross-examination that plaintiff wanted to disregard his obligation under the agreement of July 28 and wanted to "freeze Mr. McNeil out."

Ferry was engaged in commercially quarrying, processing and selling rock and gravel and related products in the Los Angeles area. He entered into negotiations with McNeil in a sort of partnership agreement whereby Ferry agreed to install equipment at said leasehold premises and to operate them for the purpose of quarrying and processing rock, sand and gravel and similar aggregates.

The oral agreement between them, entered into about October 1, 1958, was to the effect that McNeil and Ferry did constitute themselves as a partnership; that McNeil's contribution to the partnership would be the said leaseholds; that Ferry would bear the other expenses of providing the installation of equipment and would handle the affairs of the enterprise; and that McNeil's sole interest in the business after its

commencement would be the right to receive the sum of 10 cents per cubic yard for all rock, sand, gravel and other similar aggregates removed from the said leasehold.

On February 3, 1959, McNeil, by a written assignment, assigned the parcel two leasehold to "McNeil and Ferry, a co-partnership." McNeil assigned to Ferry a one-half interest in the parcel one leasehold which assignment was later affirmed by a written agreement between the parties dated July 28, 1959. Commencing in 1958 and continuing through 1959, Ferry expended several hundreds of thousands of dollars at each leasehold site for the installation of equipment and for other expenditures incident to the commencement of operations at said premises. Operations were commenced by Ferry in February 1960. On July 28, 1959, McNeil and Ferry entered into a written agreement which Ferry caused to be prepared and which was signed by McNeil while he was seriously ill and hospitalized. No contention is made, however, by McNeil that his illness or hospitalization served as any defect to the execution of said agreement. The agreement is the focal point of this case. By it the parties acknowledged that McNeil had originally acquired said leases; that the parcel two lease had been assigned to "McNeil and Ferry, a co-partnership"; that McNeil has assigned a one-half interest in the parcel one lease to Ferry and that the parties desired to state and determine the true nature of their relationship, rights and obligations. Provisions of the agreement which are pertinent to this appeal are:

"1. The total interest of first party (McNeil) in the leaseholds above referred to and in the partnership of the parties is the right to receive 10¢ per cubic yard for materials extracted as hereinafter provided.

"2. The second party (Ferry) shall have the right, without accountability except as is hereinafter provided, to exercise all rights of use, possession and enjoyment of the premises described in said leases, for the extraction, quarrying and processing of rock, sand and gravel and other aggregates, for the maintenance and operation of said premises described in said leases of plants and equipment for the manufacture of cement, concrete, asphalt and paving products and materials and other activities reasonably related thereto.

". . . . . . . . . . . .

"6. The second party (Ferry) agrees to pay the first party (McNeil) the said 10¢ per cubic yard for said materials which second party quarries or extracts from said leaseholds

for the period of the life of the first party and upon the death of the first party, second party will pay said 10¢ per cubic yard for said materials to Willie D. McNeil, wife of the first party, until the death of said Willie D. McNeil, or for a period of 10 years following the death of the first party, whichever shall first occur.''

Ferry alleged in his complaint that he has independently negotiated a lease with the owner of parcel two to commence October 15, 1961, which is the next day following expiration of the original term of the parcel two lease.

Ferry contends that he now has, under the agreement, the right to sell his equipment and to assign his interest in the parcel one leasehold free of any claim of McNeil from and after September 4, 1966; that by independently negotiating with the owner of the parcel two premises he, Ferry, has acquired on his own behalf the right to continue operations at the parcel two premises from and after October 15, 1961, and that either Ferry or his assigns have the right to operate the parcel two premises free from any claim of McNeil under the July 28 agreement. Ferry also contends that he has not paid defendant anything for several months and that he intended to disregard the provisions of the agreement as to paying McNeil or his widow any sums at all thereafter.

The trial court found generally in favor of defendant and found specifically that the Slaughterhouse Canyon lease (parcel one) expired September 5, 1961, and an option to extend the term of said lease five years has been exercised for and on behalf of plaintiff and defendant, and concluded:

''That the agreement between plaintiff and defendant . . . created a confidential relationship between plaintiff and defendant which imposes a duty upon plaintiff to operate the leasehold premises under the leases as they were in effect as of July 28, 1959, and further imposes upon plaintiff a duty to make every effort in good faith to continue operations at said leasehold premises by extensions or renewal of the respective leases, or the creation of other types of tenancies that will permit the continuation of such operations for the term of, and in compliance with, the terms of the agreement of the parties dated July 28, 1959; that plaintiff cannot assign or otherwise transfer his interest in said leases, or either of them, free of defendant's claims arising out of the terms of said agreement dated July 28, 1959; and that plaintiff and defendant are entitled to have a judgment of declaratory relief entered herein in conformity with the above findings of fact and conclusions of law.''

Judgment was entered accordingly.

On this appeal, plaintiff argues that the finding that the agreement created a confidential relationship was not justified or authorized, since plaintiff was only an assignee or sublessee of McNeil. (Citing *Robinson* v. *Eagle-Picher Lead Co.*, 132 Kan. 860 [297 P. 697, 75 A.L.R. 840].) The argument is that it would be unfair for plaintiff to renew the leases, at a possible increased cost, and still be obligated to pay defendant 10 cents per cubic yard during his lifetime and his wife for a possible period of 10 years.

Plaintiff concedes that both he and his possible assigns or successors are, pursuant to the July 28, 1959 agreement, accountable to McNeil under the parcel one lease until September 4, 1966, and under the parcel two lease for the period ending October 14, 1961.

It is apparent from the agreement that McNeil's interest stands and falls with the success of Ferry. Compensation to McNeil is based on the volume of material removed by Ferry from the leased premises. The July 28 agreement possesses none of the features incident to a sublease. McNeil and Ferry remain as copartnership owners of one lease and cotenancy owners of the other lease which is held by the partnership. The expectancy of renewal has been deemed a species of property in the lessee, and a copartner or one standing in any fiduciary capacity is not permitted to profit by taking a renewal in his own name while this expectancy exists.

" 'A tenant under a lease, while having no absolute right to a renewal as against the landlord, in the absence of a provision therefor, has a reasonable expectancy of renewal which is regarded in equity as property, and, if one standing in a fiduciary relation to him secures a renewal to himself, a court of equity will treat him as holding the new lease in trust for the original lessee.' " (*Robinson* v. *Eagle-Picher Lead Co., supra,* 132 Kan. 860 [297 P. 697, 699, 75 A.L.R. 840].)

The principle that a partner cannot derive any benefit from the partnership relationship for himself as against his copartners prevents a partner from obtaining a renewal of a partnership lease for his own purposes, to commence after the expiration of the original lease or after the termination of the partnership. The chance or opportunity of renewal of a lease held by a partnership is considered in itself a distinct asset of the partnership in which all the partners have an interest and consequently in such cases the lease so taken inures to the benefit of the firm, the partner taking it holding it as a

constructive trustee. (40 Am.Jur., Partnership, § 134, p. 222.)
In *Stewart* v. *Shearman,* 22 Cal.App.2d 198, 203 [70 P.2d 702], it was said:

" 'Cotenants stand in such confidential relation to one another in respect to the common property and the common title to it, that it would generally be inequitable to permit one, without the consent of the others, to buy in an outstanding adversary claim or title and assert it for his exclusive benefit, thereby to undermine the common title and injure and prejudice the interests of his cotenants.' "

See also *Aaron* v. *Puccinelli,* 121 Cal.App.2d 675, 678 [264 P.2d 152], where it was held that at the time the parties first negotiated with the landlord for an extension of the existing lease, there existed a fiduciary relationship between the parties, and even after the negotiations were broken off had defendants obtained a new lease it would necessarily have been for the benefit of plaintiffs as well as of defendants. To the same effect are *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal. 2d 637 [52 P.2d 237] ; *Hendrickson* v. *California Talc Co.,* 55 Cal.App.2d 467 [130 P.2d 806] ; and *Schiffman* v. *Richfield Oil Co.,* 8 Cal.2d 211 [64 P.2d 1081].

The trial court made a clear application of the rule that a partner and cotenant cannot gain the sanction of the courts in his endeavor to "freeze out" his copartner and cotenant.

Judgment affirmed.

Coughlin, J., and Brown (G.), J., concurred.